Dodd *v.* Wilkinson.

---

Daniel Dodd et al., appellants,

*v.*

George Wilkinson, receiver of the Newark Savings Institution, respondent.

The bill charged that the defendants, as managers of the Newark Savings Institution, had improperly loaned the corporate funds to F. & H., without adequate security, and that the receiver had been compelled to accept from F. & H., in settlement of the loan, securities which then were, and ever since had been, worth $400,000 less than the sum loaned. It sought to hold the defendants responsible for the loss. On demurrer to the bill—*Held,* that a loss

Dodd *v.* Wilkinson.

was sufficiently averred, although the securities were not yet turned into cash; that by settling with F. & H. for the loan, the receiver was not barred from his claim against the managers for their default; that F. & H. were not necessary parties to the suit. *Held, also,* that one of the managers having died after the alleged misconduct, his executors were responsible in his stead.

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is reported in *Wilkinson* v. *Dodd, 13 Stew. Eq. 123.*

*Mr. John R. Emery,* for the appellants, executors of Abner S. Reeve.

I. In common with the other appellants, the executors of Reeve insist that the demurrers to the bill should be sustained and the bill dismissed, for the reasons set forth in the general points relied on by the appellants.

They especially insist (1) that the bill is prematurely filed; and (2) that in equity no decree could be made holding managers liable for losses on the alleged improper loans of money and bonds to Fisk & Hatch, except upon the terms and conditions that on making good those losses, the loans and rights of action against Fisk & Hatch should be transferred to the managers, for their re-imbursement; and that as the bill discloses that Fisk & Hatch have been released by the receiver from all liability upon the loans, no equitable decree can be made against the managers; and they further insist that the allegations in the bill setting out facts upon which it is claimed as a legal proposition that the release does not so operate, are of no effect whatever, as the basis of an equitable decree, for the reason that the bill permits the release to stand in favor of Fisk & Hatch, instead of seeking its cancellation, and no equitable decree can be made without restoring to the managers who make good the alleged loss the right of action upon the loans against Fisk & Hatch.

II. That it appears by the bill itself that all losses which were sustained by the acts committed during the lifetime of Mr. Reeve have been paid and satisfied in the settlement by the receiver with Fisk & Hatch.

As to the legal rules on the subject of application of payments to one debt rather than to another, where more than one debt exists, and neither of the parties (debtor or creditor) has made the application at the time of payment, and where the court must make the application after controversy has arisen, there can be no dispute as to the general rule that where the debts are of the same legal character the payments must be applied to extinguish the debts according to the order of the time when they were incurred, and beginning with the earliest. See *1 Am. Lead. Cas. (4th ed.) 287, (5th ed.) 353, (in notes to Mayor &c., v. Patten); Livermore v. Rand, 6 Fost. 91; Parks v. Ingram, 2 Id. 283; Thompson v. Phelan, Id. 350; Milliken v. Tufts, 31 Me. 500;* also, *1 Wait's Actions and Defences 177, and cases cited;* also, *Munger on App. Paym. 102.*

Satisfaction by one of several wrong-doers, whether total or partial, enures to the benefit of all. As to total satisfaction by one of several, see *6 Wait's Actions and Defences, 418, and cases cited; Inter al. Strong v. Holmes, 7 Conn. 224; Ellis v. Bitzer, 2 Ohio 89; Thurman v. Weld, 11 Ad. & El. 453.* As to partial satisfaction being satisfaction *pro tanto* as to all, see *Merchants Bank v. Curtiss, 37 Barb. 317.*

III. The second ground specially relied on by the executors of Reeve is the insistment that in equity the estate of a deceased director cannot be held liable for an alleged wrongful act, unless his estate has benefited by the act. *Smith v. Anderson, L. R. (15 Ch. Div.) 275; Thompson's Liability of Officers 357; Hun v. Cary, 82 N. Y. 79; Peek v. Gurney, L. R. (6 E. & I. App.) 377; Phillips v. Homfray, L. R. (24 Ch. Div.) 439.*

The earlier English cases, if they are inconsistent with these later cases of *Peek v. Gurney* and *Phillips v. Homfray*, are overruled, and it must be borne in mind that at the time of the decisions in *Peek v. Gurney* and *Phillips v. Homfray*, the statute of *3 and 4 Wm. IV. c. 42* § *2*, in force, which provides that "an action may be maintained against the executors or administrators of any person deceased, for any wrong committed by him during his lifetime to another with respect to his property, real or per-

sonal " &c.  With these statutes in force the courts held that the torts or breaches complained of were not actionable at law.

The above English cases and the statute in force at the time they were decided are referred to at length, because the decision in *Tichenor* v. *Hayes, 12 Vr. 193,* upon the construction of our statute of 1855, relating to actions against executors, which is relied on by the vice-chancellor in his opinion as conclusive of the question, was to some extent founded upon the supposed construction of the English statute of *3 and 4 Wm. IV.,* above set out. (See opinion of Chief-Justice Beasley, pages 200, 201). The case of *Peek* v. *Gurney* was not referred to, and the *Phillips* v. *Homfray* case was subsequently decided, and so far as the Hayes case rests on the construction of the English statute, these late English cases must materially modify the authority of the decision in *Tichenor* v. *Hayes.*

The case of *Tichenor* v. *Hayes* was taken to the court of errors upon writ of error, and the question of the liability of the executors was fully argued by Mr. T. N. McCarter, and the case of *Peek* v. *Gurney* there referred to.  The decision went on another point, however, viz., that there was no final judgment, and no expression of the court was made upon this point, so that the question is open for argument before this court, although the vice-chancellor may have felt himself bound by the decision of a co-ordinate court.

If, for the decision of this case, it should be necessary to examine the *Tichenor* v. *Hayes* case, I submit that case was wrongly decided upon the point now in question, and that by a true construction of the act of March 17th, 1855 (*P. L. p. 340 ; Rev. p. 396 § 5*), the statute is confined to cases of damages to specific property, and does not extend to acts causing general pecuniary loss, and that the true rule is the one established by the courts of England and the courts of other states on analogous statutes. Our statute is that of March 17th, 1855 (*P. L. p. 340*), passed as a supplement to the abatement act, and incorporated in the title " Executors and Administrators" (*Rev. p. 396 § 5*), as follows :

Dodd *v.* Wilkinson.

"5. Where any testator or intestate shall, in his or her lifetime, have taken or carried away or converted to his or her use the goods and chattels of any person or persons, or shall in his or her lifetime have committed any trespass to the person or property, real or personal, of any person or persons, his or her executors or administrators shall have and maintain the same action against the executors and administrators of such testator or intestate as he, she or they might have had or maintained against such testator or intestate, and shall have the like remedy and process for the damages recovered in such action as are now had and allowed in other actions against executors or administrators."

The question arises upon that portion of the statute providing that " where any person in his lifetime shall have committed any trespass to the person or property, real or personal," the action shall survive against the executors, and the point at issue is whether this statute, fairly construed, refers to " trespasses " or injuries to specific property, or whether it embraces any wrongful act in consequence of which the general pecuniary estate is injured.  *Ten Eyck* v. *Runk, 2 Vr. 428.*

In *Tichenor* v. *Hayes,* the action was in form an action on the case for the deceit of the decedent, and his negligence as attorney, by reason of which it was claimed that the plaintiff had sustained a general pecuniary loss.   It was held in the case that the action survived, and that the act, liberally construed, as it should be, intended by " trespasses," any " wrongs " to the property, and that such wrongs were not confined to wrongs to specific property, but included any wrongs by which the general estate was injured or lessened.   The reason upon which the judgment was based, its *ratio decidendi,* was that the statute should be construed, not strictly, " but with the utmost latitude of interpretation," in view of its being a remedial act, and that the same liberality should be used in the construction of this act as in the construction of the old act of *Edward III. c. 7, de bonis asportatis &c.*   Our answer to this position, in reference to the rule of construction, is (1) that it is opposed to the well-recognized rule that statutes in derogation of the common law are to be construed strictly.   See *Sinnickson* v. *Johnson, 2 Harr. 144; Tinsman* v. *Railroad Co., 2 Dutch. 167; Potter's Dwarris*

Dodd *v.* Wilkinson.

*on Stat. 185, 192 ; Jacob* v. *United States, 1 Brock. 253 ; Surft*
v. *Luce, 27 Me. 286 ; Barrett* v. *Copeland, 20 Vt. 249.*

But (2) the rule of the common law for a personal wrong, the
remedy against the wrong-doer, as well as the reason of it, is ac-
curately expressed by Chief Baron Gilbert in the title "Execu-
tors" (*Bacon's Abr. tit. "Executors," p. 2 of "Personal Torts"*),
as follows :

"The taking of an executorship is an engagement to answer
all debts of the deceased, and all undertakings that create a debt,
as far as there are assets, but doth not embark the executor in
the personal trusts of the deceased, nor is he obliged to answer
for his several injuries, for none can tell how they might have
been discharged or answered by the testator himself." Citing
*Plowd. 181.*

And the exception or qualification to the rule, which was soon
developed, shows that this was the true reason of the disinclina-
tion of the courts to cast upon estates the burden of the decedent's
alleged wrongs, for ever since the case of *Hambley* v. *Trott, Cow-
per 376*, the rule has been that if the estate of the deceased was
benefited by the wrongful act, the action survives against his
estate.

"So far as the tort goes, an executor shall not be liable, and
therefore it is that all public and private crimes die with the
offender, and the executor is not chargeable ; but so far as the act
of the offender is beneficial, his assets ought to be answerable,
and his executor, therefore, should be charged."

This distinction is adopted universally. *Pope* v. *Gibbs, 9
Wend. 29 ; United States* v. *Daniel, 6 How. 11 ; 2 Addison on
Torts (Dudley & Bailey's ed.) 1127 ; 3 Waite's Act. & Def.
252* § *5.*

In England, under the act of *3 and 4 Wm. IV.*, above, which is
more extensive than ours, see *Tuycross* v. *Grant, L. R. (4 C. P.
Div.) 40*, where *Peek* v. *Gurney* was recognized, and the wide
distinction insisted on between actions by and actions against an
estate for wrongs or injuries.

*Gen. Stats. ch. 127* § *1,* in Massachusetts, a similar statute,
providing for survival of actions "for damage done to real or

Dodd *v.* Wilkinson.

personal estate," the statute has always been held to be confined to cases of damage to specific real or personal property, and does not extend to acts causing general pecuniary loss.

Latest cases: *Cummings* v. *Bird, 113 Mass. 366; Leggatt* v. *Moulton, 115 Mass. 332; Conly* v. *Conly, 121 Mass. 350.*

In Vermont the statute directs the survival of "actions of trespass and trespass on the case, for damages done to real and personal estate." In *Barrett* v. *Copeland, 20 Vt. 244,* an action against constable for damages sustained by a false return—*held,* action must be brought for damages done to specific property.

*Mr. Henry Young,* for William T. Mercer, Charles E. Young and Bernard M. Shanley.

In *Perry on Trusts* § *848,* it is said: "If third persons have obtained all the benefit of a breach of trust, the trustees may recover from them the loss which has occurred to the trust property."

And in such a suit Fisk & Hatch would be held primarily liable, and directed first to make good the loss. *Dorsheimer* v. *Rorback, 8 C. E. Gr. 46, 10 C. E. Gr. 516.* See, also, *Burt* v. *Bennett, 2 Bro. Ch. 225; Fenaille* v. *Coudert, 15 Vr. 186; Prall* v. *Hamil, 1 Stew. Eq. 66; Consett* v. *Bell, 1 Y. & Coll. Ch. 569; Perry* v. *Knott, 4 Beav. 179; S. C., 5 Id. 297; Williams* v. *Allen, 29 Beav. 292.*

### ELECTION OF REMEDIES.

"If the trust property or its proceeds cannot be identified, the *cestui que trust* may proceed against the trustee as an ordinary creditor; and it is said if he elects to proceed against the trustee personally, he cannot proceed against the trust fund." *Story Eq. Jur.* § *1262; Docker* v. *Somes, 2 Myl. & K. 655; Barker* v. *Barker, 14 Wis. 142; Lathrop* v. *Bampton, 31 Cal. 22; Thompson's Appeal, 22 Pa. St. 17; Oliver* v. *Pratt, 3 How. 333; Baker* v. *Disbrow, 18 Hun 30; Heathcote* v. *Hulme, 1 J. & W. 122.*

## EFFECT OF DEED OF RELEASE AND CONFIRMATION.

*Lewin on Trusts 614; Perry on Trusts § 851; Bispham's Principles of Equity 151; Hill on Trustees 582; Blackwood* v. *Barrowes, 2 Con. & Law. 476; Thompson* v. *Harrison, 2 Bro. Ch. 64; Brice* v. *Stokes, 11 Ves. 319; Wilkinson* v. *Parry, 4 Russ. 272; Nail* v. *Printer, 5 Sim. 555; Smith* v. *French, 2 Atk. 243; Harden* v. *Parsons, 1 Edw. 145; Lord Montford* v. *Lord Cadogan, 17 Ves. 485, affirmed, 19 Ves. 635.* See, also, *Trafford* v. *Boehm, 3 Atk. 440; Small* v. *Atwood, 2 Y. & J. 517; Newman* v. *Jones, Finch 58; Fellows* v. *Mitchell, 1 P. Wms. 81; Booth* v. *Booth, 1 Beav. 125; White* v. *White, 5 Ves. 555; Morley* v. *Hawke, 2 Y. & J. 517, 519, 520; Life Association &c.* v. *Siddall, 3 DeG. F. & J. 74; Buckeridge* v. *Glass, 1 Cr. & Phil. 135; Burrows* v. *Walls, 5 DeG. M. & G. 233, and cases cited; 1 Kerr (Am. ed.) 299, and cases cited; 1 Sugd. (8th Am. ed.) 252; Thayer* v. *Gould, 1 Atk. 615; Ryder* v. *Bickerton, 3 Swanst. 80.*

If a different doctrine were held, receiver could settle as he pleased with Fisk & Hatch and release them, and hold managers for the balance. He might have settled at a loss of $1,000,000, not $400,000, as he claims the loss may be. But it does not appear that even this loss will actually occur. *Sherman* v. *Lanier, 12 Stew. Eq. 255; Porter* v. *Woodruff, 9 Stew. Eq. 174.*

Now, the ground on which this release of one trustee is held to release all, is that " the remedy of the other trustees against the trustee released has been materially affected by the act of the *cestui que trust.*" *Hill on Trustees,* already cited; *Walker* v. *Symonds, 1 Swanst. 77; Perry on Trusts § 848; Lockhart* v. *Reilly, 1 DeG. & J. 464.* See, also, *Cottrell's Appeal, 23 Pa. St. 294; Kyner* v. *Kyner, 6 Watts 227; Priestman* v. *Tindall, 24 Beav. 244; Lingard* v. *Bromley, 1 V. & B. 114; Tarlton* v. *Hornby, 1 Y. & Coll. 336; Fletcher* v. *Green, 33 Beav. 513; Wilson* v. *Goodman, 4 Hare 54; Ex parte Shakeshaft, 3 Bro. C. C. 198; Perry* v. *Knott, 4 Beav. 180; Attorney-General* v. *Dallgars, 33 Beav. 624; Coppard* v. *Allen, 2 DeG. J. & S. 177; Knatchbull* v. *Fearnhead, 3 M. & C. 122; Pitt* v. *Bonner, 1 Y. & Coll. Ch. 670.*

Dodd v. Wilkinson.

*Mr. John W. Taylor,* for A. Bishop Baldwin, Charles S. Haines, Daniel Price and William Rankin.

The defendants Baldwin, Haines, Price and Rankin demur—

1. For want of parties; that is to say, because Fisk & Hatch are not made defendants.

2. For want of equity.

I. As to parties. " If the trustee commit a breach of trust, and third parties obtain the benefit of it, they must be joined as defendants, in a suit by the *cestuis que trust.*"

" If the trustees convey the property to a third person with notice of the trust, or without consideration, such third persons may be sued by the *cestuis que trust,* and must be joined with the trustees in a suit for relief by the *cestuis que trust.*" *2 Perry on Trusts (3d ed.)* § *877;* see *Id.* §§ *875, 876.*

" If co-trustees commit a breach of trust, and a third party reaps the benefit, he must also, as a *quasi* trustee, be made a defendant, since he is liable to be sued by the *cestuis que trust,* and the equities between himself and the co-trustees ought to be settled so far as is practicable." *Lewin on Trusts (2d Am. ed.) 846;* see *Id. 845; Munch* v. *Cockerell, 8 Sim. 219;* see, also, *Burt* v. *Dennet, 2 Bro. C. C. 225; Perry* v. *Knott, 4 Beav. 179; S. C., 5 Id. 297; Consett* v. *Bell, 1 Y. & C. Ch. 569; Williams* v. *Allen, 29 Beav. 292; Salomons* v. *Laing, 12 Id. 377; Wright* v. *Wood, 12 Jur. 595; Dorsheimer* v. *Rorback, 8 C. E. Gr. 46; S. C. on appeal, 10 Id. 516.*

II. Want of equity. *Broom's Maxims (7th ed.) 169.*

" A demurrer necessarily admits the truth of the facts stated in the bill, so far as they are well pleaded; but it does not admit the conclusions of law drawn therefrom, although they are alleged in the bill." *Story's Eq. Pl.* § *422; Cooper's Eq. Pl. 111; Mitford's Eq. Pl. 211, 212; Williams* v. *Steward, 3 Mer. 472, 492; Ford* v. *Peering, 1 Ves. Jr. 72; Wyatt's Prac. Reg. 163; Penfold* v. *Nunn, 5 Sim. 405; Earle* v. *Holt, 5 Hare 180.*

" A demurrer only admits matters positively alleged in the bill; not every fanciful pretence suggested." Per Baron Wood,

in *Baker* v. *Booker, 6 Price 381 ; Leo* v. *Robeson, 12 Gray 280 ; Dillon* v. *Barnard, 21 Wall. 430 ; S. C., 1 Holmes 386.*

"So, if fraud is charged in the bill, and the facts constituting the fraud are not specifically set forth, the fraud, which is a mere conclusion of law, is not admitted by a demurrer." *Fluellen* v. *Crane, 58 Ala. 627 ; Story's Eq. Pl. (9th ed.)* § *452, note a ;* see, also, *Tompson* v. *National Bank of Redemption, 106 Mass. 128 ; Pearson* v. *Tower, 55 N. H. 36 ; Partee* v. *Kortrecht, 54 Miss. 56 ; Stow* v. *Russell, 36 Ill. 18 ; 1 Dan. Ch. Pr. (5th ed.) 546.*

" Although a demurrer admits all the facts alleged in the bill, [yet] where a bill alleged, as a fact, that a check was paid, and then proceeded to detail the manner and circumstances of its payment, and the circumstances appealed to to show its payment did not establish the fact, it was held that the allegation amounted to nothing." *Redmond* v. *Dickerson, 1 Stock. 567 ;* see, also, *Tompson* v. *National Bank of Redemption, 106 Mass. 128.*

Again, contrary to the averment in the bill, and according to the legal construction and effect of the instrument set forth in the bill, the *quasi* trustees, Fisk & Hatch, have been released by the complainant, without the consent of the defendants and without a reservation of rights as against them, and therefore they are discharged. *Hill on Trustees 315 ;* see *Id. 582 ;* see *Walker* v. *Symonds, 3 Swanst. 1, 77 ; Thompson* v. *Harrison, 2 Bro. Ch. 164 ; Vandebende* v. *Livingston, 3 Swanst. 625 ; Blackwood* v. *Borrowes, 2 C. & L. 459 ; 2 Pom. Eq.* § *1081 ; Bac. Abr. tit. " Release " G ; 1 Pars. on Cont. (6th ed.) 27 ; 2 Chitty on Cont. (11th Am. ed.) 1154.*

III. It does not appear that any loss has actually occurred. At most, it appears that a loss *may* occur.

Whether it will ever actually happen depends upon whether the securities " set forth in Schedule C, valued at $1,510,330," and which "remain unsold," will yield, when sold, their estimated value. They may bring less ; they may bring *more.* See *Sherman* v. *Lanier, 12 Stew. Eq. 249, 255.*

*Mr. T. N. McCarter, Mr. C. Borcherling, Mr. G. W. Hubbell, Messrs. Teese & Pitney* and *Mr. F. Frelinghuysen,* for the other appellants.

*Mr. F. W. Stevens* and *Mr. J. D. Bedle,* for respondent.

The various objections to complainant's bill are reducible to three. It is said :

1. That the bill is defective for want of parties.

2. That the agreement of May 29th is a bar to any suit against the managers.

3. That the suit is premature.

I. Are Fisk & Hatch necessary parties to this suit ?   *Consett* v. *Bell, 1 Y. & C. 569 ; Lord Montford* v. *Lord Cadogan, 17 Ves. 485 ; Salomon* v. *Laing, 12 Beav. 377 ; Lund* v. *Blanchard, 4 Hare 9 ; Hanson* v. *Worthington, 12 Md. 418 ; Lewin on Trusts \*846 ; Yates* v. *Hambly, 2 Atk. 237 ; D'Aranda* v. *Whittingham, Mos. 84 ; Dan. Ch. Pr. 298 (1st Am. ed.);* *Munch* v. *Cockerell, 8 Sim. 219 ; McGatchen* v. *Dew, 15 Beav. 84 ; Walker* v. *Symond, 3 Swanst. 75 ; Bailey* v. *Inglee, 2 Paige 278 ; Charitable Corporation* v. *Sutton, 2 Atk. 400 ; Attorney-General* v. *Wilson, 1 Cr. & Ph. 1 ; Stainbank* v. *Fernley, 9 Sim. 556 ; Seddon* v. *Connell, 10 Sim. 81 ; Cunningham* v. *Pell, 5 Paige 607 ; Heath* v. *Erie R. R., 8 Blatch. 347 ; Newman* v. *Fowler, 8 Vr. 89 ; Andrews* v. *Murray, 33 Barb. 354.*

It is further urged that Fisk & Hatch are primarily liable, and the managers only secondarily ; and, for that reason, Fisk & Hatch are necessary parties. But it is too clear for argument that those who are primarily liable to the depositors are those whom the law has assigned, and who have voluntarily, and for compensation, agreed to guard the depositors' interests. The case of *McGatchen* v. *Dew, 15 Beav. 84,* is an authority on this point ; so is also *Thompson* v. *Harrison, 2 Bro. Ch. \*164 ; Wilson* v. *Moore, 1 M. & K. 9.*

II. The question of parties being thus disposed of, we are next to consider whether the agreement of May 29th is a bar to the suit against the managers.

In *Hun* v. *Cary, 82 N. Y. 65*, it was said that the relation between the manager and the depositor " is similar to that of trustee and *cestui que trust;*" and in *Williams* v. *McKay, 13 Stew. Eq. 189*, it was expressly decided by this court that the relation embraces all the essential characteristics of a trust, and that consequently the managers are liable to account to the depositors in a court of equity as trustees.

But Fisk & Hatch, in accepting the loan, were not guilty of any breach of trust whatever. They were not bound to know what the total assets of the institution were, nor what had already been lent on collateral. *Mutual Benefit Life Insurance Co.* v. *Elizabeth, 13 Vr. 242.*

The next insistment of the defendants is that the agreement of May 29th operates as a release to Fisk & Hatch, and therefore to the managers.

To sustain this position it must be shown—

1st. That the agreement in question is a technical release under seal.

2d. That Fisk & Hatch and the managers were guilty of the same wrongful acts.

A covenant not to sue can be pleaded only by him with whom it is made. *Line* v. *Nelson, 9 Vr. 360.*

It is not a technical release, for it does not contain technical words of release. If it does not, then in construing it the rule is simply to have regard to the intention of the parties. *Lacy* v. *Kinaston, 1 Ld. Ray. 688 ; Dean* v. *Newhall, 8 T. R. 168 ; Orane* v. *Alling, 3 Gr. 423; Couch* v. *Mills, 21 Wend. 424; Goodnow* v. *Smith, 18 Pick. 414; Brown* v. *White, 5 Dutch. 504 ; Solly* v. *Forbes, 2 B. & B. 38 ; Thompson* v. *Tack, 3 Man. Gr. & Sc. 540 ; Morris* v. *Robinson, 3 B. & C. 196 ; McIntyre* v. *Williamson, 1 Edw. Ch. 34; Kirby* v. *Taylor, 6 Johns. Ch. 252.*

III. It is next urged by the defendants that the suit is premature. It was said, in the argument in the court below, that no cause of action would arise until it was ascertained that there was a deficiency, but the argument in support of this contention fails to distinguish between the cause of action and the amount

37

of loss. The cause of action arose at latest when Fisk & Hatch wrongfully converted the bonds, and this took place at some period of time anterior to May 15th.

IV. Another question which concerns Abner S. Reeve's estate alone, remains to be disposed of. Did the cause of action abate as to him at his death ?

At law the cause of action survives both in actions *ex contractu* and *ex delicto ;* in the latter case by force of the act of March 17th, 1855. *Ten Eyck* v. *Runk, 2 Vr. 428 ; Tichenor* v. *Hayes, 12 Vr. 192.* This court is asked to establish a different rule in equity, and that, too, in cases when the decedent is called upon to respond for property wasted.

Courts of equity have uniformly held that for the breaches of trust of the decedent his personal representatives must respond. *Garth* v. *Cotton, 3 Atk. 751 ; Lord Montford* v. *Lord Cadogan, 17 Ves. 485 ; Perry* v. *Knott, 4 Beav. 180 ; London Gas Light Co.* v. *Spottiswoode, 14 Beav. 264 ; Ingram* v. *Thorp, 7 Hare 67 ; Rawlins* v. *Wickman, 3 DeG. & J. 304, 322 ; Turquand* v. *Marshall, L. R. (6 Eq.) 112, 121 ; Ashurst* v. *Mason, L. R. (20 Eq.) 225.*

And they are equally liable whether the decedent have or have not made a personal profit out of his breach of trust. *Munch* v. *Cockerell, 8 Sim. 219 ; Walsham* v. *Stainton, 1 DeG., J. & S. 678, 690 ; Dixon* v. *Dixon, L. R. (9 Ch. Div.) 587.*

If it be claimed that Reeve died before Fisk & Hatch disposed of the bonds, and is not for that reason responsible, I answer that the wrongful acts of the managers had all been perpetrated before his death, and that his estate is responsible for the loss which resulted from those acts, whether it occurred before or after his decease. *Dixon* v. *Dixon, supra.*

The cases cited by counsel, like *Peek* v. *Gurney, L. R. (6 H. of L.) 377,* and *Phillips* v. *Homfray, L. R. (24 Ch. Div.) 439,* are cases of pure tort, cognizable at law and decided on legal rules. They would have been differently decided under our statute. They are expressly distinguished from cases of breach of trust, as to which the rule is admitted to be the other way.

The opinion of the court was delivered by

Dixon, J.

The present bill is exhibited by the receiver of the Newark Savings Institution against its former managers, to charge them with the loss sustained by the institution resulting from their improper disposition of the corporate property.

The defendants have interposed several demurrers, and the questions thereby raised are now to be decided.

The first point taken by the demurrants is that the suit was prematurely brought, " because it does not appear, from the facts stated in the bill, that any loss has yet been sustained by reason of the alleged illegal loans or investments."

The bill charges that one of these loans, consisting of United States bonds, worth $2,329,600, was made to Fisk & Hatch, bankers of New York city; that before the loan was repaid, Fisk & Hatch failed, and the complainant was constrained to make a settlement with that firm, by which he received from them, in satisfaction of the debt, securities the value of which then was, and ever since has been $400,000 less than the value of the bonds loaned. This is a sufficient allegation of loss. That these securities have not yet been turned into cash and possibly may rise in value before sale, does not do away with the fact that ever since the receiver took possession, the assets of the institution have been $400,000 less than they would have been had this loan not been made.

The other points presented on behalf of the demurrants generally, are to the effect that Fisk & Hatch, to whom the improper loan was made, should have been included in the bill as defendants, and that the receiver, by executing a certain agreement with that firm, which is set out in the bill, has released them from all liability for the bonds loaned, and thereby has discharged the defendants, who, on making good the alleged loss, would have been entitled, it is claimed, to all the rights which the institution originally had against Fisk & Hatch for the recovery of the loan.

The fault charged against the defendants consists in their

having negligently or willfully loaned the bonds to Fisk & Hatch without adequate security. Upon the making of this loan, the institution acquired two causes of action : one against its agents, the defendants, for their misconduct, the other against Fisk & Hatch for their indebtedness. The agreement mentioned appears, by express averment on its face, to have been made for the purpose of settling the differences between the receiver and the firm arising out of said indebtedness, and we have not been able to see upon what principle of law or equity this should be held to have satisfied the claim of the corporation against the defendants for their misconduct. If the corporation had been able to insist that the defendants' act in making the loan was beyond the scope of their authority, and had repudiated that act, and sued its agents for a conversion of its property or in any form for a restoration of the trust fund, then the settlement with Fisk & Hatch would have afforded them a conclusive defence, for it would have been totally inconsistent with such a position. But there is no inconsistency in the corporation's present claims. It admits that it is bound by the loan made by its agents, but it avers that those agents omitted to take proper care of its interests in making that loan. These claims are perfectly distinct and independent, and the obligation of Fisk & Hatch as to one, and that of the defendants as to the other, are both primary. there is no reason for holding that the corporation may not pursue these claims separately, or that it must preserve unimpaired its claim upon the loan as a condition to its seeking a remedy for the wrong of its agents. On the hypothesis that the loan was a corporate act, there existed no relation whatever, legal or equitable, between the defendants and Fisk & Hatch, and therefore there is no ground for applying to them the rules which pertain to principal and surety, or to those who are primarily and secondarily, or jointly, liable for the same debt or duty. Even if Fisk & Hatch took part in the wrong-doing of the defendants, there would be no right of contribution among them as tort-feasors, and the institution would not be required to involve itself in litigation with third parties, in order to call its agents to account for their breach of duty.

Dodd v. Wilkinson.

It may be that, while the corporation held its claim for the debt against Fisk & Hatch, the defendants were equitably entitled to tender full re-imbursement to the corporation and ask an assignment of the debt, and that this privilege is now lost to them; but that loss has arisen solely from their omission to make the tender in due time, and not at all from any inequitable conduct of the receiver. Indeed, as soon as the control of affairs passed into his hands he became subject to the operation of the rule that the damages for which even wrong-doers are responsible are only those that happen in spite of due diligence to prevent them, and if the receiver had been remiss in his efforts to collect the debt and greater loss had thereby ensued, the defendants might justly have denied their liability therefor. If the receiver, by his settlement with Fisk & Hatch, has secured from them as much as was practicable, then he has done all that the defendants can be supposed to have been capable of doing, if his claim had been assigned to them. If he has not realized so much, the loss will fall on the institution, and not on the defendants.

We are therefore of opinion that the receiver, by his settlement with Fisk & Hatch for the loan, is not barred from his remedy against the defendants, and that Fisk & Hatch are not concerned in, and hence are not necessary parties to, the present controversy.

The last point to be noticed is taken on behalf of the executors of Abner S. Reeve, a manager who died subsequently to the misconduct complained of. It is insisted that his estate cannot be held responsible for his default. The case is covered by our statute (*Rev. p. 396 § 5*) as heretofore interpreted (*Ten Eyck* v. *Runk, 2 Vr. 428 ; Tichenor* v. *Hayes, 12 Vr. 193*), and in that interpretation we concur.

The decrees below, overruling the demurrers, should be affirmed.

*Decrees unanimously affirmed.*