Williams *v.* McDonald.

WASHINGTON B. WILLIAMS, receiver &c., appellant,

*v.*

OWEN T. W. McDONALD, respondent.

1. The defendant, who was a director and member of the finance committee of a savings bank, which afterwards became insolvent, and a receiver was appointed, having acted with the president in investing its funds on mortgage on real estate, not worth at least double the amount of the sum invested above all encumbrances, against the prohibition in its charter (*P. L. of 1869 p. 180 ? 10*), is chargeable with loss on the investment.

2. He is not chargeable for any mere error of judgment or mistake in estimating the value of property, using reasonable and ordinary care.

3. It is not essential to allege and prove that he acted fraudulently, or that he derived any benefit from the loan; it is sufficient to show that there was a culpable violation of duty as *quasi* trustee of the funds of the bank, by which loss was sustained.

Williams *v.* McDonald.

On appeal from a decree of the chancellor, whose opinion is reported in *Williams* v. *McDonald, 10 Stew. Eq. 409.*

*Mr. W. B. Williams* and *Mr. E. S. Cowles,* for appellant.

*Mr. Theodore Ryerson,* for respondent.

The opinion of the court was delivered by

SCUDDER, J.

The defendant, Owen T. W. McDonald, the appellee in this court, was a director and member of the finance committee of the Mechanics and Laborers Savings Bank of Jersey City from November, 1873, to September, 1878, covering the date of the matter in controversy in this suit. In June, 1875, Michael Murphy and his wife, desiring to purchase three lots of land and the buildings thereon, at the northwest corner of Warren street and Railroad avenue, in Jersey City, where they resided and had carried on business for several years, agreed on the price, $16,200, with John Craven, the agent of the owners. This purchase price was to be paid, and secured by a cash payment of $1,200, a bond and mortgage on the premises to Stephen S. Southard for $9,000, a like bond and mortgage to Jeremiah Mundell for $2,000. These were concurrent liens, and, for the balance, Murphy testifies, he went and asked McDonald if he would get him a loan of $4,000. McDonald says Murphy came to him, told him he was about to buy the property; wanted him to loan him $4,000 on a second mortgage; he figured up the value of the property, and came to the conclusion that it was a very good investment, and agreed to let him have the $4,000 of his own money on this bond and mortgage. At that time McDonald had $10,393.99 on deposit in the savings bank. He notified the secretary of the bank of his wish to withdraw $4,000 of his deposit. At the day appointed, Halliard, the president, asked McDonald to have the bond and mortgage assigned to the bank, being a profitable investment, as the bank was paying him six per cent. on his deposit, and the bond and mortgage were

drawn at seven per cent. They were executed by Murphy to McDonald, and assigned by him to the bank, in pursuance of Halliard's request, according to McDonald's evidence. Halliard, when examined, was broken down in health and forgetful, but says that McDonald made application to him, or rather to the bank through him, to procure a loan of $4,000 for Murphy, and that he informed him, what he himself knew, that the bank had no funds on hand that would warrant them in making a loan; but McDonald had a large deposit, and said he would make the loan, and take the money from the bank, and, by so doing, make the extra one per cent. interest. He concluded it would be better for the bank to take the loan, and told McDonald to have the bond and mortgage assigned to the bank, and he would manage to get the money. This arrangement, however it was begun or conducted, resulted in a check for $4,000, dated June 2d, 1875, given by the bank to the order of McDonald, and endorsed by him to Jeremiah Mundell, by whom it was collected. On June 25th, within a month after this loan, Murphy paid to the bank $1,000 on account, and the interest was afterwards paid up to November 1st, 1877; after that he ceased to pay; the prior mortgage was foreclosed, and the property sold by the sheriff February 6th, 1878, for $6,000. Since this sale Murphy has been without property to pay the debt. The bank became insolvent in November, 1878, and the receiver was appointed March 7th, 1879. The bond and mortgage and the assignment in controversy came into his hands as part of the assets and securities of the bank. On December 21st, 1881, the receiver demanded of the defendant the amount of principal due on the bond and mortgage, $3,000, with interest from November 1st, 1877, and tendered their re-assignment. On refusal to pay, this bill was filed.

The charge made in the bill is that the defendant, as one of the directors and managers of the bank and a member of the finance committee, was charged with notice of the prohibition in its charter against investing its funds on bond and mortgage, excepting on real estate worth at least double the amount of the sum invested above all encumbrances (*P. L. of 1869 p. 180* §

*10*); that it was a breach of his duty to invest the funds of the bank as he did, and that having obtained this unauthorized investment through his procurement, and received the money for his own benefit, he is chargeable with this breach of trust and liable to indemnify the bank, its creditors and depositors, against loss. There is no material dispute between the parties as to the facts, except it is denied that the defendant received the money for his own benefit; and the liability of the defendant to the charge for loss on the investment is also denied in the answer. The real estate on which the mortgage was given is valued by witnesses from $15,000 to $23,000. The variance is evidently due to estimates based on uncertain rentals of rooms, and speculative valuations from the expectation that being near the shops of the railroad company, it might soon be required for an enlargement of their grounds, on the one extreme, and what the property would bring at a fair private sale between willing parties desirous to sell and to purchase, on the other side. The proof shows, in my judgment, that the property was sold to Murphy at a reasonable valuation, and that as a security for loans, no higher estimate could be reasonably put upon it. The defendant was well acquainted with it, and knew the price Murphy was to pay for it, and, upon any construction that may be placed on the words of the charter restriction, must be charged with violating its terms when he procured or assented to the loan by the bank of $4,000, which made a total encumbrance of $15,000 on a property selling for $16,200. The words of the restriction are awkwardly expressed, but mean at least double the amount of the sum invested and double all encumbrances. The word "above" signifies excess, and the word "double" qualifies this excess, so that it may read double the investment and double the encumbrances. This is an ordinary and approved estimate of real estate as security for loans.

The defendant could not be chargeable for any mere error of judgment or mistake in estimating the value of property, using reasonable and ordinary care in forming that judgment and making the estimate, but here there was no such error or mistake, for he knew the purchase price of the property, was well

acquainted with its rentals, its location and advantages.   He was a friend of Murphy, and has sold him groceries and liquors at wholesale at that place for several years.   Neither can he be excused because the loan was made at the solicitation of the president and for the alleged benefit of the bank, for as a manager, director and member of the finance committee, he was charged with a duty to the corporation and to its depositors, and cannot be exonerated by the unlawful act of any of his associated officers.   He could not deal as a stranger with the president or any other officer of the company in making this loan to a third party.   His own funds he might draw from the bank and invest as he chose, taking this bond and mortgage for his security, but he could not, by direct participation, assent to the taking of the funds of the corporation or its depositors upon security forbidden by the charter without violating his trust and becoming, equally with the president, and severally, liable for any loss or damage resulting therefrom.

Among the charges in the bill, it is said that the defendant " received the said money for his benefit," but this is not a necessary averment to fix his responsibility.   It is separable from the other charge, that it was a breach of his duty, as a trustee for the bank and its depositors, to invest and lose the trust funds by taking securities for loans forbidden by the charter.   It is not essential to prove that he acted fraudulently or that he derived any benefit from the loan ; it is sufficient to show that there was a culpable lack of prudence, or failure to exercise with ordinary care his functions as *quasi* trustee of the funds of the bank, by which loss was sustained.   The receiver, who has succeeded to the property, by the appointment of the court, for the purpose of settling and winding up the affairs of this corporation, is the proper party to bring this action, and the defendant is rightfully charged and should be held liable under the pleadings and evidence.

The authorities are abundant and decisive on the points above determined ; among them may be cited *Williams* v. *McKay, 13 Stew. Eq. 189 ; Williams* v. *Riley, 7 Stew. Eq. 398 ; Hun* v. *Cary, 82 N. Y. 65 ; Brinckerhoff* v. *Bostwick, 88 N. Y. 52 ; Hodges*

v. *New England Screw Co.*, 1 R. I. 312, 3 Id. 9; *Joint Stock Discount Co.* v. *Brown*, L. R. (8 Eq.) 381; S. C., L. R. (3 Eq.) 139; *Land Credit Co.* v. *Fermoy*, L. R. (8 Eq.) 7; S. C., L. R. (5 Ch. App.) 763; *Spering's Appeal*, 71 Pa. St. 11; 3 Pom. Eq. Jur. §§ 1090–1094.

The receiver has not been guilty of any unnecessary delay or laches, as against this defendant, in obtaining information of the affairs of the insolvent company, and prosecuting this claim in behalf of the corporation and its creditors.    The decree will be reversed, with costs.

*Decree unanimously reversed.*