The matter sub judice was argued before me as vice-chancellor on April 17th, 1933. After my retirement as vice-chancellor the consideration and determination of divers motions to dismiss the bill of complaint and for bills of particulars in the above stated cause were referred to me as *Page 456 
advisory master. My consideration of the motion made in behalf of defendant James Cowden Meyers to strike the bill of complaint as against said defendant actuates me in determining that said motion should be denied and I will advise an order accordingly. The reasons assigned in the notice of motion aforesaid are insufficient to effect the contemplated purpose. The claim that complainants have an adequate remedy at law is untenable. The claim that complainants have no standing to maintain their suit and that the court of chancery was without jurisdiction to adjudge the Fidelity Title and Mortgage Guaranty Company insolvent and appoint complainants as trustees (Docket 88, page 204) is not only untenable but cannot be urged collaterally as attempted herein. The defendant Meyers and his co-defendants had ample opportunity to question the jurisdiction of the court and the legality of said adjudication and appointment in orderly judicial procedure if either of them considered themselves aggrieved by said decree. The various reasons set out in the notice of motions sub judice are insufficient to warrant the striking of the bill of complaint when the nature of the cause, the fiduciary offices held by the defendants named in the bill, the duties and the responsibilities which such defendants owed to one another and to the Fidelity Title and Mortgage Guaranty Company of Ridgewood incident to and arising out of their fiduciary relation with each other and with said company andcestuis que trustent for whom said company, and the defendant Meyers and his co-defendants were acting in a fiduciary capacity, and the fact that the defendant Meyers together with his co-defendants were chargeable in law and equity with knowledge of the manner in which the business affairs of the company were transacted, and the acts of commission and omission of said defendant and his co-defendants with respect thereto as alleged in the bill of complaint, are duly considered. While some of the allegations contained in the bill of complaint are not precise it must be assumed that the defendant Meyers and his co-defendants, if honestly and faithfully performing the duties devolving upon them, and *Page 457 
if faithful to the trusts confided to them in their fiduciary capacities, had knowledge of the activities of said company and of the manner in which its business was conducted during the time said defendant Meyers and his co-defendants were associated with said company in their official and fiduciary capacity. The bill of complaint as a whole is sufficiently informative to apprise the defendants of the nature of the case charged against them and which they are required to meet and answer. It is a well known rule of equity pleading that the test of sufficiency as to the degree of certainty with which averments of a bill of complaint must be made, must, to a considerable extent, depend upon the circumstances of the particular case. It appears to me that the allegations of the bill of complaint sub judice are as informative and substantial as the rules of pleading reasonably require in a case such as stated in said bill. I consider it will suffice for me to say that, taken as a whole, a case of negligence, mismanagement, maladministration, breach of trust, malfeasance, misfeasance, non-feasance, waste and dissipation of moneys and property committed to the care of said defendants in a fiduciary relationship tantamount to trusteeship, and other matters of wrongdoing charged in bill of complaint, all of which are alleged to have resulted in great damage to said company and its mortgage participation certificate holders, bondholders and stockholders, are so manifested in and by said bill of complaint that the defendants named therein should be able to meet such allegations by admission, by denial, or by pleading lack of knowledge or information sufficient to form a belief as to the facts therein stated. Although the bill of complaint is somewhat loosely framed in some respects, it contains, in substance, when taken as a whole, a statement of violation of duties, breaches of trust, transgressions, delinquencies and acts of commission and omission chargeable and charged against the defendants, which they ought to be able to meet by answer admitting, denying, or pleading lack of knowledge or information sufficient to form a belief as to the facts therein stated. Taken as a whole I regard the bill of complaint as stating an equitable *Page 458 
cause of action against all of the defendants named therein. SeeWilliams v. McKay, 40 N.J. Eq. 189; 46 N.J. Eq. 25; Williams
v. McDonald, 42 N.J. Eq. 392; Roseville Trust Co. v. Mott,85 N.J. Eq. 297; LaMonte v. Lurich, 86 N.J. Eq. 26; Citizens LoanAssociation of Newark v. Lyon, 29 N.J. Eq. 110; affirmed,30 N.J. Eq. 340; Four Corners Building and Loan Association ofNewark v. Schwarzwaelder, 88 N.J. Eq. 212; Custis v. Serrill
(Pa.), 154 Atl. Rep. 487. In the Custis Case, supra (at p.489), it was held: "Where a motion to dismiss a bill for insufficient pleadings is made and it is not clear whether they are objectionable on that account, but, because of the nature of the action, a broad inquiry into the facts should be made, the court should refuse to dismiss the bill in such doubtful cases and proceed to a full hearing." See, also, Griffith v.Seagreaves, 81 Pa. 378. In Williams v. McKay, supra (atpp. 203, 204), Chief-Justice Beasley said: "It is only after answers and evidence, and on the final hearing, that the connection of the several defendants with the transactions in question, and the measure of the responsibility of each defendant, can be ascertained and established." When as in the case sub judice the bill shows a systematic violation, over a long period of time, of duties and obligations cast by law upon officers and directors of a corporation such as the Fidelity Title and Mortgage Guaranty Company, there is a prima facie
presumption that such course of dereliction and misconduct was known to all of such officers and directors. In the instant case it is quite manifest prima facie that the relation between the directors of the aforesaid company and mortgage participation certificate holders, bondholders, and others with whom said company dealt, is similar to that of trustee and cestui quetrust. Hun v. Cary, 82 N.Y. 65, cited in Williams v. McKay,supra (at p. 198). It is a well known rule of law that for any willful breach of trust by officers and directors of a financial institution such as the company in behalf of which the complainants herein sue, or misapplication of the corporate funds, or for any gross neglect of, or inattention to, their official duties, such officers *Page 459 
and directors are liable; and if the corporation be insolvent and its affairs are in the hands of receivers or trustees, such receivers or trustees may maintain an action against the officers and directors chargeable with dereliction, delinquencies, misconduct and wrongdoing. It has been brought to my attention since the matter sub judice was argued that several of the defendants herein named have died since this suit was commenced. Notwithstanding such death the estates of such deceased defendants may be held liable for such wrongful acts of the decedents as charged in the bill of complaint if substantiated by adequate proofs upon the final hearing of the cause. See Dodd
v. Wilkinson, 41 N.J. Eq. 566 (at p. 581). The bill of complaint herein avers that the directors of the Fidelity Title and Mortgage Guarantee Company who are mentioned in paragraphs 8 and 9 of said bill were dominated by defendant CorneliusDoremus, who was the president of said company, and that his power of domination and control of said defendants as directors aforesaid was effected by means of the formation of an executivecommittee to which said defendants, as the board of directors of said company, delegated and transferred or purported to delegate and transfer authority vested in them as such board of directors, in total disregard of their legal and fiduciary obligations to said company and its cestuis que trustent. That the aforesaid directors were fiduciaries of the corporation is unquestionable. Paragraph 17 of the bill avers quite specifically in numerous clauses and subdivisions particulars of transgressions, misconduct, breaches of trust, maladministration, and acts of commission and omission charged against the defendants, and particularly circumvention and circumlocution alleged to have been resorted to by the defendants as trustees aforesaid perfidious to the trust confided to them as directors aforesaid, whereby great losses were suffered by said company and itscestuis que trustent through the use of "dummy" mortgages, and by means of other reprehensible and dishonest practices unnecessary to be particularized herein for the purpose of my determination of the motion sub judice. A reference thereto and to other paragraphs of *Page 460 
the bill will readily manifest the perfidy, palpable violation of fiduciary duties and responsibilities, and unlawful practices resorted to by the defendants as directors of said company, and by appraisers of real estate appointed by said defendants or the appointment of whom was sanctioned by them, whose activities the defendants were obliged to be ever watchful of, but which obligation they flagrantly violated, disregarded and neglected, and by an executive committee appointed by said defendants or the appointment of which was sanctioned by them, the activities of which the defendants were obliged to be ever watchful of, but which obligation they flagrantly violated, disregarded and neglected. The business management of a corporation is confided to its directors and they must act for and in behalf of the corporation; they cannot abrogate their independent judgment.Jackson v. Hooper, 76 N.J. Eq. 592. In Williams v. McKay46 N.J. Eq. 25 (at p. 39), the court used language which may — when all the facts are adduced at final hearing herein — appropriately be used in the case set up in the bill of complaint herein, with respect to the relationship between Mr. Doremus, president of the Fidelity company, and the directors of said company: "The atmosphere was one of apathetic disregard of personal obligation and abject submission to the will of the president of the bank." It is charged in clause 6 of paragraph 17 of the bill of complaint that the defendants, as officers and trustees aforesaid, by reason of the divers acts charged against them in said bill, caused losses to mortgage participation certificate holders and bondholders in a sum upwards of$1,000,000. The last sentence of subdivision (b) of said clause and paragraph charges that by reason of the acts of the defendants as set out in said subdivision the defendants are liable to complainants Merritt Lane, John Milton and Henry H. Parmalee, as trustees of the Fidelity Title and Mortgage Guaranty Company of Ridgewood, in the sum of $400,000, which is said to be loss of capital of the company, for which they are responsible to complainant Frank H. Smith, as trustee for mortgage participation certificate holders and bondholders in said bill mentioned, for such loss *Page 461 
as the trust estate committed to said trustee suffers by defendants' acts as charged against them. Subdivisions (1), (2), (3) of clause 6 of paragraph 17 of the bill of complaint allege unlawful payment of dividends by the defendants from the funds of the company, and for which they are asked to respond in damages to the complainants. It is a well known rule of equity pleading that if one or more of the allegations of a bill of complaint are well pleaded and set forth an equitable cause of action the bill as a whole cannot be stricken. Furthermore, a motion to strike, under present practice, is tantamount to a demurrer under the old practice, and necessarily admits the truth of the facts stated in the bill, so far as well pleaded. It of course does not admit conclusions of law drawn therefrom, although they are alleged in the bill. Broom Max. (7th ed.) 169. The quotation of Chief-Justice Beasley, in Williams v. McKay, 40 N.J. Eq. 189,
and his observations as to the gist of the bill of complaint in said case, is in my opinion substantially analogous and applicable to the averments of the bill of complaint herein, and particularly to the averments in paragraphs 16 and 17 of said bill: "And I entirely repudiate the notion that this board of managers could leave the entire affairs of this bank to certain committeemen and, then, when disaster to the innocent and helpless cestuis que trustent ensued, stifle all complaints of their neglects, by saying, we did not do these things, and we know nothing about them. Plainly, such was not the opinion of Lord Hardwicke, when, in the case of Charitable Corp. v.Sutton, 2 Atk. 400, he said: `Committeemen are most properly agents to those who employ them in the trust, and who empower them to superintend and direct the affairs of the corporation. If some persons are guilty of gross negligence, and leave the management entirely to others, they may be guilty by this means of the breaches of trust that are committed by others.' As matters are now present before this court, I think these defendants must be charged with knowledge of the systematic doing of these illegal acts. And in the next place, in my opinion, the same inference must obtain, for present purposes, with respect to that long series *Page 462 
of improper and illegal loans alleged to have been secured by mortgages on property of insufficient value. Many of these instances show a gross neglect of duty by the officers of the ban, and constitute very flagrant violations of the requirements of the charter. It may be that these transactions were kept by the commitemen engaged in them from the knowledge of the other managers, but, as the facts now appear, there can be no such inference in their exoneration. The misconduct in question was manifested in frequent, glaring instances, and it is not easy to imagine how they, or some of them, failed to be discovered by these boards of managers on the supposition which, in their favor the law will make, that they exercised their office in this respect with a reasonable degree of vigilance. The neglectful acts in question cannot be regarded by the court as isolated instances, for they run through the whole period of the life of this institution, and thus evince a systematic and habitual disregard of the directions of the company's charter, and a very striking indifference with regard to the security of the money held in trust by them." The chief-justice then (at pp. 202,203) quotes remarks of Lord Hatherly, in another case cited: "I am exceedingly reluctant * * * in any way to exonerate directors from performing their duties, and I quite agree that it is their duty to be awake, and that their being asleep would not exempt them from the consequences of not attending to the business of the company. * * * a committee was appointed, called the executive committee, and that the functions of the directors were transferred to this committee, so far as regarded proposals for business and for loans and other matters. The committee from time to time reported to the directors, and the directors had a right to ask proper questions, and to decide thereon according to their discretion; and the directors must be tried as any other trustees accused of neglecting their duties." The chief-justice stated (atp. 203): "Resorting to these principles as properly applicable to the situation of affairs as made apparent on the face of this bill, it does not seem reasonable to declare that the defendants in the present case are not sufficiently inculpated *Page 463 
to require them to answer, for it is the rational conclusion that unless they were, according to the expression of the English chancellor, `asleep,' they must have become aware of these long-continued infractions of duty on the part of their committees. In both these respects, that is, on the subject of these illegal loans on mere personal security and on scanty real estate, an answer is due from these officers." The chief-justice further stated (at pp. 203, 204): "To declare that complainant, in a case of this nature, must in limine show the mode and time of the participation of each individual officer in the particular instances of misconduct specified, would be, in point of fact, to declare that the complainant was not entitled to a practicable remedy. It is only after answers and evidence, and on the final hearing, that the connection of the several defendants with the transactions in question, and the measure of the responsibility of each defendant, can be ascertained and established."